## Shroder *versus* Breneman.

The mere throwing of manure on another's land is not such an adverse possession as will give any right under the statute of limitations to him who does it; much less will it enable a third person to say that the title of the original owner is divested by such user by others and appropriate the ground to himself.

ERROR to the Common Pleas of *Lancaster county*.

This was an action of trespass *vi et armis quare clausum fregit*, to January T., 1852, by A. N. Breneman *v.* John F. Shroder. The plea was, Not guilty.

John F. Shroder purchased a house and lot on the east side of North Queen street near Centre square, in the city of Lancaster, from George B. Withers, executor of George Withers, deceased, containing thirty feet in front, sixty feet deep. Deed dated 1st day of April, 1851. On the east side of said lot, John Metzgar owned a lot with a brick warehouse thereon, fourteen feet and three inches adjoining Shroder's lot on the north-east, and fifteen feet and three inches *along an alley*, which said Metzgar conveyed to said Shroder by deed, dated 15th day of March, 1852. The lower part of the eastern side of the first above-mentioned lot of Shroder is bounded by *an alley*, which turns to the east between the property purchased from Metzgar and A. N. Breneman. Shroder tore down or converted said warehouse into a kitchen, &c., on the first above-mentioned lot. Breneman alleged that in doing so he encroached on said alley by erecting a small balcony, and therefore he brought this action of trespass.

LONG, J., charged, *inter alia*, as follows: "If the plaintiff is possessed of the freehold or soil, a mere right of way in other persons over that soil would not take away this right of action for any obstruction which may be erected upon it. Here the alleged injury is the erection of a balcony projecting over the ground which the plaintiff avers he is owner of, and attached to a building belonging to the defendant; it is elevated to a considerable height from the ground. This, however, would be a trespass if the plaintiff be the owner of the soil below, for a title to land gives to the owner all that is upon or above it. Neither would a mere non-user of the premises, by the plaintiff or those under whom he claims, destroy his right or title to the freehold, unless the premises, or that part upon which the alleged trespass is committed, was given up by the plaintiff, or those under whom he claims, for twenty-one years or more, and adverse possession for that period taken by some one else, who held the same in opposition to the owner. Such adverse possession may be shown

by any one occupying the same, using or putting a building upon it, or doing some such act as would go to show that he claimed it as his own; and when adverse possession is thus held for twenty-one years, the owner is divested of all right to the soil, and it would require the same length of time of adverse possession on his part to regain the ownership.

*" As regards the adverse possession spoken of in this case, I am of opinion the defendant has failed in showing such adverse possession as the law recognises. It is true that one of the witnesses testifies that he knew the premises in dispute forty-five years ago; that in 1807 there was a privy upon it; that it was an old building at that time, and Judge Schaeffer testifies that he knew it for many years, and that it was removed in 1824; that afterwards it was used for a dung heap by Dr. Kerfoot, who rented a stable or building to which the privy was attached; and other witnesses prove that it was used as a place for the deposit of filth until about six or seven years ago, when Howett's warehouse was built. According to the testimony it appears the privy stood for about seventeen years; and afterwards it was used as a dung heap and deposit for filth. It is true Dr. Kerfoot made use of it as a dung heap, and that he was the tenant of the stable to which the privy was attached while it existed; but he was also, at the same time, the tenant of the premises now owned by the plaintiff, and I cannot discover that his using the dung heap was inconsistent with the right of the plaintiff.*

" If you should determine that the plaintiff has made out his title, the least encroachment upon his freehold or soil by the erection of the balcony would entitle him to a verdict."

On the part of the defendant points had been submitted, the third of which was: It having been shown that forty-five years ago an outbuilding, then an old one, and considered to belong to Miller, under whom defendant claims, stood in the corner where the balcony complained of now is, and that from 1824 until about six years since, the pit of such outbuilding was occupied *by neighbors*, as a place of deposit for filth of various kinds, the possession of the ground in dispute is proven out of the plaintiff, and therefore, before he can obtain a verdict, he is bound to prove that he had twenty-one years' adverse and uninterrupted possession of said premises, previous to the commencement of this suit.

The answer was as follows: There being no evidence given to show that the possession of the premises in dispute was out of the plaintiff twenty-one years, this point therefore is answered in the negative.

August 27, 1852, verdict for the plaintiff.

[Shroder v. Breneman.]

Error was assigned, *inter alia*, to the negative answer to the *third* point submitted on part of defendants, and to the part of the charge which is between asterisks.

*Frazer*, for the plaintiff in error.—The principal error was in charging the jury that the defendant had shown nothing to prevent the plaintiff's recovery. It was contended that a case was made out of adverse possession by the privy and manure pit, from 1807 till 1846, when the stable and its appurtenant pit were displaced by Howett for his warehouse.

The privy was larger than the present balcony of Shroder, and the privy pit became the manure pit after the upper part of the privy was taken down in 1824; the foundation walls of that privy were continued and used afterwards as a receptacle for brute instead of human filth. This privy was appurtenant to the Miller property, belonged to it, and thus held under that right by Kerfoot, (as a tenant, not allowed to dispute his landlord's title) as a stable for his horses, &c.; and this possession, adverse, open, notorious, and positive, was not affected because Kerfoot resided with his family at the same time in the property now owned by plaintiff.

Nor did the throwing, by *others* using said alley, of filth in said pit, affect the possession of Kerfoot. And so the Court should have instructed the jury; or at all events have said, that if these facts were so, and found by them, the defendant was entitled to their verdict.

*Landis* and *Franklin*, for defendant in error.—It was said that there was no evidence, that the ground over which the balcony projects was ever claimed by the owners of the *Miller* property, from the time the privy was removed by Judge Sheaffer (1824), until the defendant came into possession of the same. If they ever claimed title to the ground, which was denied, it was a title gained by possession, which their long silence and neglect to exercise any right over it, shows was abandoned, or lost in the same way it was acquired. But if the ground was kept as a depository for manure, it was not by the Miller family. If Kerfoot kept his manure there, he was plaintiff's tenant, and had a right to keep his manure where he pleased. The mere fact of Kerfoot doing so, is not the exercise of a right so inconsistent with the plaintiff's title that the same can be used against him.

As to the answer to the 3d point, there was no testimony submitted to the jury, that went to show that the ground now in dispute ever was out of the plaintiff or those under whom he claims. As early as the year 1824 the privy was removed, and there is no evidence to show that owners of the Miller property ever claimed the ground, from that time up to the period when the title became

vested in the defendant.   The plaintiff was therefore not bound to prove *that he had* 21 *years' adverse and uninterrupted possession* to entitle him to a verdict: Hawk *v.* Senseman, 6 *Ser. & R.* 21.

The opinion of the Court was delivered by

BLACK, C. J.—This is trespass for building a balcony which overhung the plaintiff's land.   It was found, upon evidence quite sufficient, that the soil belonged to the plaintiff, though it was subject to a right of way, and was used as a private alley.   The only point of the case which is strong enough to bear an argument is, that the statute of limitations had extinguished the plaintiff's title.   There was a privy on the ground in dispute, but it is not proved to have been there for twenty-one years.   To eke out the case, it was shown that after the privy was removed, the spot it had occupied was used for a dungheap.   This will not do.   The mere throwing of manure on another's land is not such an adverse possession as will give any right under the statute to him who does it; much less will it enable a third person to say, that the original owner's title is gone, and appropriate it to himself for that reason.

If we thought the errors assigned to the admission of evidence were important, we would probably examine them although they are not specified according to the rule.   In dismissing them for want of formal correctness, we bring the case to the same conclusion it would reach if we decided them on their merits.

Judgment affirmed.

LEWIS, J., dissented.